1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 | TONY SCHULTZ, individually, and on | CASE NO. C10-1263 RSM
behalf of a class of others similarly

11 | situated, | ORDER GRANTING
DEFENDANT'S MOTION TO

12 | Plaintiffs, | DISMISS

13 | v.

14 | UNITED AIRLINES, INC., a Delaware
corporation d/b/a UNITED AIRLINES;

15 | NORTHWEST AIRLINES, INC., a
Delaware corporation; and DELTA AIR

16 | LINES, INC., a Delaware corporation,

17 | Defendants.

18

19 | **I. INTRODUCTION**

20 | This matter comes before the Court on Motion to Dismiss (Dkt. #64) brought by

21 | Defendant Delta Air Lines, Inc. ("Defendant"). Plaintiff Tony Schultz ("Plaintiff") alleges in his

22 | Second Amended Complaint (Dkt. #63) that Defendant breached a contract as a result of their

23 | failure to deliver his baggage in a timely manner after Plaintiff paid the checked baggage fee.

24

1   Plaintiff seeks to bring a class action consisting of all passengers whose baggage was lost,

2   delayed, or damaged after having been charged a baggage fee by Defendant.  Plaintiff brings

3   claims for breach of contract, breach of covenant of good faith and fair dealing, and unjust

4   enrichment.  Defendant seeks dismissal of all claims on the grounds that Plaintiff's claims are

5   preempted by the Airline Deregulation Act, and that Plaintiff does not state a claim for breach of

6   contract.

7

8                                      **II. BACKGROUND**

9          Plaintiff alleges that on June 25, 2009, Defendant charged him a baggage fee to transport

10  his bag on a flight from Hawaii to Seattle.  Defendant allegedly delivered the baggage after a

11  delay of over twenty-four hours.  Plaintiff argues that by charging a fee, an implied contract was

12  created.  However, Defendant contends that no contract was created by Plaintiff's payment; and

13  therefore Plaintiff has no right to a refund.

14         Defendant argues that the terms of the ticket establish the contract of carriage, also

15  known as the Conditions of Carriage, which is the controlling contract in this dispute.  This

16  Court, in a previous Order (Dkt. #60), determined that it may take judicial notice of the

17  Conditions of Carriage.  Furthermore, Defendant contends that the Airline Deregulation Act

18  prohibits states from regulating prices, routes, and services of air carriers, and that as such

19  Plaintiff's claims relating to baggage transport are preempted.

20

21

22

23

24

# III. DISCUSSION

## A. Preemption

The issue of whether a state-law claim is preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ("ADA") has been addressed by the Supreme Court. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008); *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995); *Morales v. Trans World Airlines*, Inc., 504 U.S. 374 (1992).  In a recent interpretation of these decisions, the Ninth Circuit noted that "Congress enacted the ADA to deregulate domestic air transport, and included the preemption clause 'to ensure that the States would not undo federal deregulation with regulation of their own.'" *Sanchez v. Aerovias De Mexico, S.A. De C.V.*, 590 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Morales*, 504 U.S. at 378).  The preemption clause of the ADA provides that a "State … may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier…."  49 U.S.C. § 41713(b)(1).  The *Morales* decision concluded that "a state law or enforcement action is 'related to' a 'price, route, or service' if it 'has a connection with or reference to' a 'price, route, or service.'" *Id.* (quoting *Morales*, 504 U.S. at 384-88).

However, the Supreme Court created an exception to this general doctrine in *Wolens*.  In *Wolens*, the Court held that where a claim would be otherwise preempted, the preemption clause of the ADA does not afford shelter to airlines from suits that do not allege a violation of obligations imposed by states.  Rather, where suits seek recovery solely for the airline's alleged breach of a self-imposed undertaking or obligation, the claims are not preempted.  *Wolens*, 513 U.S. at 228.  Thus, the Court found that although the plaintiffs' claims in *Wolens* did relate to "rates" and "services," the ADA does not preempt court enforcement of "privately-ordered contract terms set by the parties themselves." *Sanchez*, 590 F.3d at 1030 (citing *Wolens*, 513 U.S.

at 226-33).  As such, even where an obligation is self-imposed, maintaining that obligation must

not rely on state law or policies to enhance or enlarge the existing contract.  *Onoh v. Northwest*

*Airlines*, Inc., 613 F.3d 596, 600 (5th Cir. 2010); *Howell v. Alaska Airlines*, Inc., 994 P.2d 901,

905 (Wash. Ct. App. 2000).  Therefore, "an otherwise preempted claim may remain viable under

the ADA if it falls within the two-prongs of the *Wolens* exception: 1) the claim alleged only

concerns a self-imposed obligation; and 2) no enlargement or enhancement of the contract occurs

based on state laws or policies external to the agreement."  *Onoh*, 613 F.3d at 600.

The *Wolens* case involved a class action against an airline arising out of a dispute related

to the airline's frequent flyer program.  The Supreme Court held that the ADA preempted claims

based on the Illinois Consumer Fraud and Deceptive Business Practices Act, but that the ADA

did not preempt state law breach of contract claims alleging that the airline had breached an

agreement with its passengers regarding frequent flyer miles.  *See Wolens*, 513 U.S. 219.  As

such, the Court drew a distinction between self-imposed and state-imposed obligations, finding

that claims relating to the self-imposed obligations were not preempted by the ADA.  *See id.*

The Washington case of *Howell v. Alaska Airlines* is factually similar to the case at hand.

994 P.2d 901 (Wash. App. 2000).  *Howell* addressed claims brought in a prospective class action

seeking to collect refunds of nonrefundable tickets under theories of impossibility of

performance, frustration of purpose, illusory promises, procedural and substantive

unconscionability, breach of duty of good faith and fair dealing, and unjust enrichment.  *Howell*

noted that the plaintiffs were not seeking to enforce the contract according to its terms.  *Id.* at

905.  Rather, they sought to have the airline's actions declared unlawful by application of state

laws and policies external to the contract.  *Id.* at 905.  Thus, the *Howell* Court held that plaintiffs'

claims were preempted because the plaintiffs were attempting to enlarge or enhance their

1  agreement with defendant based on the external laws or policies of the state. *Id.* at 905.

2  Similarly, in the case at hand Plaintiff sues for a refund of a baggage fee charged by the airline,

3  and alleges that a breach of contract resulted from the delay in transporting Plaintiff's baggage.

4  To permit Plaintiff to proceed with these claims would be to allow Plaintiff to enlarge the alleged

5  contract by operation of external state law.

6        Any liability resulting from damage or delay to baggage is expressly governed by the

7  airline's Conditions of Carriage.  The Conditions of Carriage permit the airlines to create a

8  consistent policy governing liability arising from the transport of baggage.  Moreover, the

9  Conditions of Carriage are federally regulated and must comply with 14 C.F.R. § 254, which is

10  promulgated by the U.S. Department of Transportation and establishes the limits carriers are

11  permitted to impose on liability for lost, damaged, or delayed baggage.  As were the

12  circumstances in *Howell*, Plaintiff has not sued to enforce the terms of a contract, but has sought

13  to enhance his agreement by seeking a refund of the baggage fee based on the external laws of

14  the state.

15        As discussed *supra*, *Howell* presents a similar scenario to the case at hand.  While the

16  *Wolens* court found that claims regarding the airline's self-imposed obligations regarding

17  frequent flyer programs were not preempted, *Howell* held that claims regarding ticket refunds

18  were, in fact, preempted.  In examining the facts and rationales of both *Howell* and *Wolens*, the

19  facts before this Court, which concern claims for baggage refunds, are strikingly more similar to

20  claims for ticket refunds than to claims relating to frequent flyer agreements.  Disparate state

21  policies and treatment of liability arising from the handling of baggage, an activity that is central

22  to the business of the airlines, could greatly complicate the operation of airlines.  Moreover,

23  federal rules have been promulgated by the Department of Transportation addressing airline

24

1  liability for baggage.  By contrast, airline policies regarding frequent flyer miles are not central

2  to the operation of the airlines and have not been directly regulated by federal agencies.

3       Both *Howell* and *Wolens* emphasize the need for uniformity in regulation of the airline

4  industry.  *Howell* notes that "a plaintiff's claims could potentially and improperly cause the rate

5  of airline tickets in the state in which [an] action was brought to differ from those available in

6  other states."  *Howell*, 994 P.2d at 904.  Furthermore, *Wolens* explains that "[t]he ADA's

7  preemption clause is meant to stop [s]tates from imposing their own substantive standards with

8  respect to rates, routes, or services, but not from affording relief to a party who claims and

9  proves that an airline dishonored a term the airline itself stipulated."  *Wolens*, 513 U.S. at 232.

10  In the case at hand, Plaintiff's claims for a refund of the baggage fee as a result of the alleged

11  breach of contract employ external state law to enlarge an existing agreement regarding baggage

12  transport.  The purpose of the ADA would be frustrated by permitting the kind of inconsistency

13  that would result from imposing substantive state theories of liability arising from baggage

14  transport.

15  **B.  Self-Imposed Undertaking**

16       Plaintiff argues that his breach of contract claim is based on a "self-imposed undertaking"

17  and that, consequently, his claims fall within the *Wolens* exception and are not preempted by the

18  ADA.  This Court directed Plaintiff to identify in his Second Amended Complaint the source and

19  substance of the "self-imposed undertaking" upon which his claims are based.  *See* Dkt. #61,

20  Order on Motion to Dismiss.  Upon examination of the Second Amended Complaint, Plaintiff

21  has failed to identify the source and substance of the alleged "self-imposed undertaking."

22  Having already determined that the Contract of Carriage is an express contract which governs the

23  relationship between the parties, Plaintiff has not alleged facts that would tend to prove the

24  existence of a distinct, self-imposed contractual obligation.

1    Plaintiff relies on the theory that a self-imposed undertaking was created in the form of

2    an implied contract.  However, the mere fact that Plaintiff paid an additional charge for the

3    checked baggage, along with language on Defendant's website expressing its aspirational

4    intention to deliver baggage in a timely manner is insufficient to create an implied contract.  In

5    Washington, an implied contract exists if there is an offer; there is an acceptance; the acceptance

6    is in the terms of the offer; it is communicated to the offeror; there is mutual intention to

7    contract; and there is a meeting of the minds of the parties.  *Milone and Tucci, Inc. v. Bona Fide*

8    *Builders, Inc.*, 301 P.2d 759, 762 (Wash. 1956).  There is simply insufficient evidence to support

9    the conclusion that Defendant intended to create a distinct contract or that the parties reached a

10   meeting of the minds.  The language to which Plaintiff refers on Defendant's website is merely

11   precatory, and falls far short of evincing an intent to contract.  The absence of intent to enter a

12   distinct contract is especially true in light of the existence of the Conditions of Carriage, which

13   govern the parties' contractual relationship.  As such, no implied contract exists, and Defendant

14   cannot be said to have entered into a self-imposed undertaking that would avoid preemption

15   under the ADA.

16   **C.  Breach of the Covenant of Good Faith and Fair Dealing**

17   Because no implied contract exists, and because there is no evidence that a breach of the

18   terms of the Conditions of Carriage has occurred, Plaintiff cannot bring a claim for breach of the

19   covenant of good faith.

20   **D.  Unjust Enrichment**

21   Having held that the Conditions of Carriage serve as the contract between the parties, and

22   that therefore a contract exists, Plaintiff may not bring a claim on the theory of unjust

23   enrichment.

24

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 7

1

## IV. CONCLUSION

2

    Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,

3

and the remainder of the record, the Court hereby finds and ORDERS:

4

    (1) Defendant's Motion to Dismiss (Dkt. #64) is GRANTED.

5

    (2) This action is DISMISSED with prejudice.  The Clerk is directed to close this case.

6

7

    Dated June 22, 2011.

8

9

10

11

                         RICARDO S. MARTINEZ

12

                         UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24